**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 21 C 2680** |
| | ) | |
| **RONALD FEDER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Ronald Feder pled guilty to transportation of child pornography, distribution of child pornography, and possession of child pornography. Consistent with the terms of his plea agreement, the Court sentenced Feder to a twenty-five year prison term, followed by a lifetime term of supervised relief. Feder has filed a *pro se* motion under 28 U.S.C. § 2255, claiming ineffective assistance of counsel on the part of the attorney who negotiated his plea deal. He asks the Court to (1) vacate and set aside his sentence and schedule a resentencing hearing, (2) resentence him to a five to ten year prison term, or (3) in the alternative, schedule an evidentiary hearing concerning his attorney's effectiveness. The Court denies Feder's motion for the reasons stated below.

**Background**

In 2014, Feder—an employee of the Department of Defense stationed on board the U.S.S. Walter Diehl—was questioned by military criminal investigators in his quarters. During the questioning, Feder admitted to possessing child pornography and

to molesting his nine-year-old brother when he was seventeen years old. The military criminal investigators searched Feder's quarters and discovered electronic media storage devices containing child pornography. Two years later, in September 2016, Feder was indicted on one count of knowing possession of child pornography in the special maritime and territorial jurisdiction of the United States. *United States v. Feder*, No. 16 CR 587 (N.D. Ill.). That case was assigned to another judge of this court. Feder retained attorney Hal Garfinkle to represent him in the case. Feder was released on bond on September 20, 2016.

While on bond, Feder responded to a Craigslist ad posted by—unbeknownst to him—an undercover enforcement officer (UC) that sought individuals interested in discussing a "taboo request." Plea Agreement at 3. Feder told the UC that he had a "collection" that he could share and offered to talk further on an encrypted mobile chat application called Wire Swiss GMbH (Wire). *Id.* Between November 26 and December 6, 2017, Feder sent the UC over Wire approximately two videos and twenty-two images containing child pornography. Feder also offered to give the UC child pornography in exchange for organizing a meeting during which Feder could molest the UC's minor nephew and niece.

On December 7, 2017, Feder and the UC met in person at a coffee shop in Lincolnwood, Illinois. In exchange for a pair of children's underwear, Feder gave the UC a thumb drive containing approximately 453 videos and 7,932 images of child pornography. He again asked the UC to coordinate a meeting at which he could molest the UC's nephew and niece. Feder was subsequently arrested and indicted in a new case separate from his then-pending case. *United States v. Feder*, No. 17 CR 789

(N.D. Ill.). The new case was assigned to the undersigned judge. Eugene Steingold was appointed under the Criminal Justice Act to represent Feder in the case.

On February 19, 2019, Feder entered a guilty plea in Case No. 17 CR 789 pursuant to a written plea agreement. In the agreement, Feder admitted the conduct underlying both of the cases pending against him. He also admitted that he had molested his minor brother on two or three occasions when he was seventeen years old. The plea agreement calculated an anticipated advisory sentencing range of 360 months (thirty years) to life, based on an anticipated offense level of forty-two and anticipated criminal history category of I. The agreement also included an agreement by Feder to cooperate with the government in any ongoing investigation and a related agreement to a specific sentence, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Specifically, the plea agreement stated that if the government moved the Court under U.S.S.G. § 5K1.1 to depart from the applicable guideline range based on his truthful cooperation, and if the Court accepted the plea, the Court would impose a term of imprisonment of twenty-five years.

In February 2019, after Feder signed the plea agreement, the Court conducted a plea colloquy in open court. Feder was under oath during the plea colloquy. Feder verified under oath that he had enough time to talk to his attorney about the charges, he had enough time to talk to his attorney about his decision to plead guilty, his attorney had answered all of his questions, he was satisfied with the advice he had received from his attorney, and he was satisfied with the work that his attorney had done for him thus far. Feder also stated that he had read his plea agreement carefully, his attorney had explained each part of the agreement, and he understood everything in the

3

agreement.  The Court tested this by asking questions about particular aspects of the agreement.  Feder stated under oath that he was not pressured, promised, or coerced into pleading guilty.  He also stated that he understood that if, as contemplated by the plea agreement, the government asked for a departure from the applicable advisory sentencing range, his sentence would be a prison term of twenty-five years.  At the conclusion of the hearing, the Court accepted Feder's guilty plea, while reserving until the time of sentencing whether to accept the parties' agreed-upon sentence.

On June 27, 2019, the date that he was to be sentenced, Feder filed a *pro se* motion to dismiss attorney Steingold because of his claimed "lack of communication and obvious indifferences to the facts."  Mot. to Withdraw Att'y at ECF p. 1 of 1.  The Court denied Feder's motion based on the representations he made during the plea colloquy, but it continued the sentencing hearing to August 13, 2019 to give Feder more time to "read and digest the sentencing memorandum."  June 27, 2019 Hr'g Tr. at 18.

At the sentencing hearing, the government made a section 5K1.1 motion, asking for a downward departure from the advisory guidelines based on Feder's cooperation. The Court granted the motion, accepted the agreed-upon sentence, and sentenced Feder to twenty-five years in prison, followed by a lifetime term of supervised release. Feder later filed an appeal but dismissed it prior to briefing.

On May 17, 2021, Feder filed a *pro se* motion under 28 U.S.C. § 2255.  He asserted two grounds for relief.  First, Feder argues that Steingold was ineffective because he failed to file a motion to suppress, which—if granted—would have created a "reasonable probability" that Feder would not have pled guilty.  Def.'s Mot. at 2. Second, Feder claims that Steingold made a string of missteps with respect to the plea

4

agreement that amounted to ineffective assistance of counsel. Specifically, Feder claims: (1) Steingold "misadvised Defendant about the advantages and disadvantages of negotiating and accepting a Rule 11(c)(1)(C) plea agreement"; (2) "Steingold did not file pre-plea motions and pre-sentencing motions disputing the government's version of the case and presentence report guideline sentencing calculations"; (3) "Steingold erroneously stated to Mr. Feder that he could argue for a lower sentence at [the] sentencing hearing even though he had signed an 11(c)(1)(C) plea"; and (4) "[a]cceptance of the 11(c)(1)(C) plea deprived Mr. Feder of arguing that based on his extra-ordinary cooperation with the government [the Court] should give him a sentence closer to the mandatory minimum." *Id.* at 2–3.

### Discussion

Under 28 U.S.C. § 2255, a court may vacate, set aside, or correct a sentence imposed in violation of the laws of the United States. Feder claims that he was denied his Sixth Amendment right to effective assistance of counsel. To prevail on such a claim, he must meet the two-part test outlined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). He must show that (1) his counsel's performance "fell below an objective standard of reasonableness" and (2) this deficient conduct caused him to suffer prejudice. *Id.* at 687–88. In the guilty plea context, prejudice requires "a reasonable probability that [the movant] would not have pled guilty absent his attorney's deficient conduct." *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010). It is not enough for the movant simply to allege that he would have gone to trial; he must come forward with objective evidence demonstrating that he would not have pled guilty. *Id.*

A.      **Ground 1**

Feder's first claim is that his attorney Steingold was ineffective for failing to file a motion to suppress the evidence obtained on the Walter Diehl in 2014.  He contends that this evidence was obtained in violation of the Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436 (1966), because the investigators did not give him *Miranda* warnings and continued to interrogate him after he requested an attorney.  According to Feder, Steingold used this illegally-obtained evidence to pressure him into pleading guilty.

A defendant seeking to prove counsel's ineffectiveness for failure to file a motion to suppress evidence must show that the motion likely would have succeeded.  *United States v. Stewart*, 388 F.3d 1079, 1084 (7th Cir. 2004).  To prevail on a motion to suppress based on a *Miranda* violation, a defendant must show that he was subjected to custodial interrogation.  *United States v. Thompson*, 496 F.3d 807, 810 (7th Cir. 2007) (citation omitted).  "A custodial interrogation occurs when there is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *United States v. Barker*, 467 F.3d 625, 628 (7th Cir. 2006) (quoting *Miranda*, 384 U.S. at 444).  This inquiry is an objective one:  the court must determine "how a reasonable man in the suspect's position would have understood his situation." *United States v. Jones*, 21 F.3d 165, 170 (7th Cir. 1994) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984)) (internal citation marks omitted).  Factors that courts consider include "the location of the questioning; its duration; statements made during the interview; the presence or absence of physical restraints during the questioning; and the release of the interviewee

6

at the end of the questioning." *Howes v. Fields*, 565 U.S. 499, 509 (2012).

Feder makes several factual allegations to support his claim that his rights under *Miranda* were violated. He states that he was "confronted" in his quarters after a double shift at work; he was "extremely tired and under prescribed medication for severe depression"; and he was "disoriented." Def.'s Mot. at 2. He also contends that he was "unable to leave"; he "requested an attorney and was told that it was not necessary"; and he was told that "if he did not speak to them, the investigators would speak to Mr. Feder's ship captain." *Id.*

Even if the Court accepts all these allegations as true, they do not show that Feder was in custody. Feder was questioned in his own room, rather than in an interrogation room or a police station. *See Thompson*, 496 F.3d at 811 (finding that the defendant was not in custody when the officers questioned him in his home). He was not placed under arrest, and he does not contend that the investigators ever handcuffed him or restrained him in any way. *See United States v. Leal*, 1 F.4th 545, 552 (7th Cir. 2021) (finding that the defendant was not in custody where "the agents did not use physical restraint, brandish their weapons, or flaunt a threatening presence") (citation omitted). Additionally, the officers left Feder's quarters without arresting him, allowing him to leave after the questioning. *See United States v. Patterson*, 826 F.3d 450, 458 (2016) (finding that the defendant was not in custody, in part, because he left after the interrogation). Although Feder may have felt pressured to speak to the officers to avoid involving his ship captain in the investigation, there is no indication that officers coerced him—physically or verbally—into talking to them. In fact, his statement that the officers told him that if he did not speak to them they would take further steps points away from

7

a finding that Feder was in custody, as it indicates that Feder had options other than speaking to the officers.  And although Feder states that he was "unable to leave," he does not allege that the officers prevented him from leaving or even that they actually told him that he could not leave.  Feder's subjective belief that he was not allowed to leave does not support a finding that he was in custody.  See *Leal*, 1 F.4th at 549 (stating that a defendant's "subjective beliefs are irrelevant in a Miranda custody determination").

In addition, Feder offers nothing outside his own assertions, to support his contention that he was in custody.  He offers only his Bureau of Prisons psychiatric records, which cover the years 2017 through 2021 but shed no light on his mental state when he was questioned aboard the Walter Diehl in 2014.  Without more, there is no reasonable basis to support a conclusion that a reasonable person in Feder's situation would have believed he was in custody.  And for this reason, he was not entitled to *Miranda* warnings or to cessation of questioning if and when he asked for an attorney. *See United States v. Wyatt*, 179 F.3d 532, 537 (7th Cir. 1999) ("The Fifth Amendment right to counsel safeguarded by *Miranda* cannot be invoked when a suspect is not in custody . . . .") (citation omitted).  Because Feder fails to show that his motion to suppress had any reasonable chance of success, he cannot show that Steingold was deficient for failing to file it.  *See Stewart*, 388 F.3d at 1085 ("[Defendant's] counsel cannot have been ineffective for failing to pursue what we have concluded would have been a meritless suppression motion.").

8

**B.      Ground 2**

In his second claim, Feder argues that Steingold was ineffective in his

negotiation of and representation of Feder concerning the plea agreement.  Feder's

arguments in support of this claim are undermined by his own statements, made under

oath, during the plea colloquy.  Although Feder *now* states that Steingold failed to

properly advise him about the advantages and disadvantages of negotiating and

accepting the plea agreement, failed to make pre-plea and pre-sentencing motions, and

spent very few hours with him, Feder said nothing of the kind during the plea colloquy

when specifically asked about his dealings with Steingold and whether he had any

problems with Steingold's representation.  In fact, Feder affirmatively stated that he was

satisfied with the answers, advice, and work that Steingold had provided in his case.

And when the Court gave Feder an open-ended opportunity to bring up any problems

that he had with Steingold's legal representation, Feder declined to do so:

> THE COURT:  All right.  So if you had any problems at all with the quality of Mr. Steingold's legal representation, it's important to tell me now because now is when I have a chance to do something about it.
>
> So, for example, if you think there's something that he didn't do that he should have done, or you think that there's something that he did that he should not have done, or if you think that there's something that he did incompletely or incorrectly, it's important to tell me now.
>
> Do you have any issues like that with Mr. Steingold at all?
>
> THE DEFENDANT: No.
>
> THE COURT:  Okay.  You hesitated for a second.
>
> THE DEFENDANT:  I have had a few questions come up recently that have been addressed, though.
>
> THE COURT:  Okay.  But they got addressed?

THE DEFENDANT: Yes.

Feb. 19, 2019 Hr'g Tr. at 13–15.  In other words, Feder affirmatively represented, under oath, that his "questions" regarding Steingold's representation had been addressed. Feder cannot now do an about-face and contend that Steingold should have done more or done differently.

Feder further contends in his motion that Steingold failed to investigate his "obvious and serious emotional problems."  Def.'s Mot. at 7.  This contention is undermined by the record.  Steingold stated during the plea colloquy that he was "trying to get a psychosexual evaluation for [Feder], for somebody that would . . . come to the MCC, because he is locked up."  Feb. 19, 2019 Hr'g Tr. at 15.  And, in fact, Feder did consult with a psychologist while at the MCC, and Steingold presented the psychologist's conclusions and recommendations in Feder's sentencing memorandum. Because one would have expected an examining psychologist conducting a psychosexual examination to address any mental health issues that Feder had, his contention that Steingold failed to investigate the matter is unsupported.  Additionally, Steingold acknowledged several times in his sentencing memorandum that Feder had a history of depression, was diagnosed with major depressive disorder, and was "prescribed medication for depression."  Def.'s Sentencing Mem. at 3, 7, 8, 12.

Feder contends that Steingold not only failed to investigate his emotional problems but also "seized upon this fragility to convince him to accept a plea so totally against his interests."  Def.'s Mot. at 7.  Essentially, Feder argues that Steingold used his emotional issues to improperly pressure him into signing the plea agreement. Again, this statement is belied by the statements that Feder made under oath during the

plea colloquy.  During the plea colloquy, Feder specifically denied that "anybody tried to pressure [him] or threaten [him] or coerce [him] to get [him] to plead guilty."  *Id.* at 16–17.

Feder also contends that Steingold erroneously told him that he could argue for a lower sentence at a sentencing hearing.  But even if that is true, Feder cannot viably claim that this advice affected his decision to plead guilty.  Such a claim would run head-on into Feder's statements at the plea colloquy.  During that hearing, the Court went through the provisions of the plea agreement with Feder and stressed that if the Court accepted the parties' agreement, Feder would not be able to ask for a sentence other than the agreed-upon twenty-five year prison term.  Specifically, the Court stated:

> THE COURT:  Paragraph 13 says that if the government makes that request to sentence you below the guideline range, you and the government have made an agreement that *I'm going to impose a sentence of 25 years' imprisonment*.  Do you understand that?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  And what paragraph 13 goes on to say is that if I agree with that and impose that sentence, you will not be able to change your mind and back out of the plea agreement.  In other words, *that's going to be the sentence*.  Do you understand that?
>
> THE DEFENDANT: I do.

*Id.* at 30 (emphasis added).  Feder stated that he understood that he could not argue for a lower sentence at the sentencing hearing.  Even if Steingold mistakenly told him otherwise, the Court made no such mistake, and thus Feder knew before he formally pled guilty at the end of the colloquy that the Court would impose the agreed-upon sentence if it accepted the government's downward departure motion.  In short, Feder's decision to plead guilty could not

have been affected by any mistaken advice on Steingold's part. Feder knew that he could not argue for a lower sentence after the plea agreement was accepted and chose to plead guilty regardless.

Lastly, Feder claims that Steingold rendered ineffective assistance by depriving him of the opportunity to dispute two sentencing enhancements: (1) the distribution of child pornography in exchange for valuable consideration and (2) a pattern of activity involving the sexual abuse or exploitation of a minor. These enhancements were based on allegations that Feder (1) offered to trade child pornography for the opportunity to molest the UC's minor nephew and niece and (2) molested his minor brother on two or three occasions when Feder was seventeen. Feder claims to have "consistently disputed" these incidents in conversations with Steingold. Def.'s Mot. at 8. He also contends that, had he been allowed to contest these enhancements, his sentencing range would have been as low as 121 to 151 months' imprisonment (about ten to twelve-and-a-half years).

Feder assumes that he would have succeeded in contesting these enhancements. Not so. Feder specifically admitted to the incidents underlying the two sentence enhancements. In the plea agreement, Feder admitted that he "offered to trade child pornography with the UC in exchange for the UC agreeing to coordinate a meeting at which [Feder] could molest the UC's minor nephew and niece." Plea Agreement at 4. He also admitted that "at age 17, [Feder] masturbated his then ten or eleven year-old brother on two to three occasions." *Id.* at 7. During the plea colloquy in open court, Feder told the Court that he had read the plea agreement carefully with his attorney, he agreed "with each and every one of the facts that are stated in [the plea

agreement]," and there was nothing in the agreement with which he disagreed. Feb. 19, 2019 Hr'g Tr. at 37–38. These admissions foreclose the possibility that Feder could have succeeded in challenging the Guidelines enhancements and thus started out with an advisory range closer to the mandatory minimum, even if he had secured a plea agreement that allowed him to argue for sentence reductions.

Feder cannot overcome the contradictions between his current arguments and the admissions and statements he made in the plea agreement and under oath during the plea colloquy. Under Seventh Circuit precedent, there is a strong presumption that statements made by a defendant during a plea colloquy are true. *Hurlow v. United States*, 726 F.3d 958, 968 (7th Cir. 2013). ""[A] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a *compelling explanation* for the contradiction." *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) (emphasis added).

Feder does not provide a compelling explanation for the contradiction. He states that he "acquiesce[d]" to the plea because he was experiencing "severe depression, high anxiety, and loneliness," preventing him from making a "knowing and intelligent decision." Def.'s Mot. at 10. To support this claim, he offers his psychiatric records, which indicate that he was experiencing "erratic moods" around the time of the plea agreement. Def.'s Ex. at ECF p. 31 of 60. But again, Feder's argument is in direct conflict with his representations at the plea colloquy. During the plea colloquy, Feder had ample time to tell the Court about any mental health issues that he had. If he had concerns about depression, anxiety, and loneliness affecting his ability to understand or agree to the plea, he could have—and should have—brought it up then. Instead, Feder

13

told the Court only that "[t]he only diagnosis . . . I'm aware of is the ADHD." Feb. 19, 2019 Hr'g Tr. at 10. He assured the Court that this did not affect his ability to communicate or deal with his attorney. And although Feder's psychiatric records indicate that he was experiencing some emotional problems at the time of the plea agreement, they do not reflect that these issues were so severe as to excuse lying under oath—which is what Feder has to show to contradict his statements during the plea colloquy.

Aside from his inability to prove that his lawyer's conduct was deficient, Feder cannot show prejudice. Specifically, Feder does not show that, but for his attorney's deficient representation, he would have rejected the plea deal and insisted on going to trial. Instead, Feder argues that he would have accepted a Rule 11(c)(1)(B) plea and argued for various sentencing reductions. That is insufficient to meet the standard for granting a section 2255 motion based on ineffective assistance in connection with a guilty plea. *See Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006) ("[A] claim that a defendant would not have entered this *particular* plea agreement is not sufficient to show prejudice.") (emphasis added). Rather, Feder must show that he would not have pled guilty *at all*; "[w]hether he could have negotiated a better plea deal is irrelevant . . . ." *Id.* That aside, Feder offers no basis to believe that there would have been another plea deal for him to accept if he had turned down the one that he ultimately agreed to. Specifically, there is no basis in the record to support a belief that the government would have offered a different, let alone a better deal than the one Feder accepted. Accordingly, Feder fails to meet his burden to show that Steingold's deficient representation prejudiced him.

14

**Conclusion**

For the foregoing reasons, the Court denies Feder's motion to vacate, set aside or correct the sentence under section 2255 [dkt. no. 1] and directs the Clerk to enter judgment dismissing Feder's motion with prejudice. The Court declines to issue a certificate of appealability because the merits of Feder's claims are not debatable, capable of different resolution, or deserving of further consideration. *See* 28 U.S.C. §2253(c)(2); *Porter v. Gramley,* 112 F.3d 1308, 1312 (7th Cir. 1997).

MATTHEW F. KENNELLY
United States District Judge

Date: September 21, 2021

15